UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **10-20767 CR-KING**

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
18 U.S.C. § 2
18 U.S.C. § 982

MAGISTRATE JUDGE
BANDSTRA

UNITED STATES OF AMERICA

vs.

LAWRENCE S. DURAN,
MARIANELLA VALERA,
JUDITH NEGRON,
MARGARITA ACEVEDO
      aka Margarita De La Cruz,
AMERICAN THERAPEUTIC
CORPORATION,
and
MEDLINK PROFESSIONAL
MANAGEMENT GROUP, INC.,



FILED by_____ D.C.

OCT 19 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

                    Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.      The Medicare Program ("Medicare") is a federal health care program providing

benefits to persons who were over the age of sixty-five or disabled. Medicare is administered by

the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United

States Department of Health and Human Services.   Individuals who receive benefits under

Medicare are referred to as Medicare "beneficiaries."

2.      Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      Part B of the Medicare program covers partial hospitalization programs ("PHPs") connected with the treatment of mental illness.   The treatment program of PHPs closely resembles that of a highly structured, short-term hospital inpatient program, but it is a distinct and organized intensive treatment program that offers less than 24-hour daily care and is designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

4.      Under the PHP benefit, Medicare covers the following services:  (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

5.      Medicare generally requires that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allows a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

6.      Medicare requires that, to qualify for the PHP benefit, the services must be reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must be reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization.  The program must be

2

prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meet Medicare requirements.

7.     Typically, a patient who needs this intensive PHP treatment has a long history of mental illness that has been treated.  Patients are ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who is trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor has been treating.

8.     Medicare guidelines specifically exclude meals and transportation from coverage under the PHP benefit.

9.     Medicare does not cover programs involving primarily social, recreational, or diversionary activities.

10.     In order to receive payment from Medicare, a CMHC, medical clinic or physician is required to submit a health insurance claim form to Medicare, called a Form 1450.  The claims may be submitted in hard copy or electronically.  A CMHC, medical clinic, and physician may contract with a billing company to transmit claims to Medicare on their behalf to process and submit claims for reimbursement.

11.     Medicare Part B is administered in Florida by First Coast Service Options ("FCSO"), which, pursuant to contract with the United States Department of Health and Human Services, serves as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs.  Medicare Part B pays CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services meet Medicare requirements.

**Defendants**

12.     Defendant **LAWRENCE S. DURAN**, a resident of Miami-Dade County, was the manager and owner of **AMERICAN THERAPEUTIC CORPORATION** and **MEDLINK PROFESSIONAL MANAGEMENT GROUP, INC.**  Though **DURAN** controlled the daily operations of **AMERICAN THERAPEUTIC CORPORATION**, he was not listed on **AMERICAN THERAPEUTIC CORPORATION'S** State of Florida corporate records. **DURAN** was listed on the State of Florida corporate records of **MEDLINK PROFESSIONAL MANAGEMENT GROUP, INC.** as president, registered agent, and director.

13.     Defendant **MARIANELLA VALERA**, a resident of Miami-Dade County, was the owner, CEO, president, secretary and treasurer of **AMERICAN THERAPEUTIC CORPORATION.**

14.     Defendant **JUDITH NEGRON**, a resident of Miami-Dade County, was the vice president of **MEDLINK PROFESSIONAL MANAGEMENT GROUP, INC.**

15.     Defendant **MARGARITA ACEVEDO**, a resident of Miami-Dade County, was the Marketing Director of **AMERICAN THERAPEUTIC CORPORATION**.  **ACEVEDO** supervised **AMERICAN THERAPEUTIC CORPORATION'S** marketers but, at times, worked for **MEDLINK PROFESSIONAL MANAGEMENT GROUP, INC.**

16.     Defendant **AMERICAN THERAPEUTIC CORPORATION** ("ATC") was a Florida corporation originally established in 2002 and was headquartered in Miami, Florida. **ATC** operated several purported PHPs throughout Florida from Homestead to Orlando, including PHPs at the following addresses: 1801 NE 2nd Avenue, Miami, Florida 33132; 61 Grand Canal Drive, Suite #100, Miami, Florida 33144; 1001 West Commercial Blvd., Fort Lauderdale, Florida 33309; 4960 North Dixie Highway, Fort Lauderdale, Florida 33334; 27112

4

South Dixie Highway, Naranja, Florida 33032; 717 East Palmetto Park Road, Boca Raton, Florida 33432; and 4790 North Orange Blossom Trail, Orlando, Florida 32810.

17.    Defendant **MEDLINK PROFESSIONAL MANAGEMENT GROUP, INC.** ("**MEDLINK**") was a Florida corporation established in 2003 and was headquartered at 1809 NE 2nd Avenue, Miami, Florida 33132. **MEDLINK** was a company **DURAN**, **NEGRON,** and other co-conspirators used as a vehicle to charge monthly fees to **ATC** for managing **ATC's** operations, including hiring employees, running daily operations, and controlling finances and other site management activities.

## COUNT 1
## Conspiracy to Commit Health Care Fraud
## (18 U.S.C. § 1349)

18.    Paragraphs 1 through 17 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19.    From on or about December 13, 2002, through the present, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**LAWRENCE S. DURAN,**
**MARIANELLA VALERA,**
**JUDITH NEGRON,**
**MARGARITA ACEVEDO,**
**AMERICAN THERAPEUTIC CORPORATION,**
**and**
**MEDLINK PROFESSIONAL MANAGEMENT GROUP INC.,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises,

money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

20.    It was a purpose and object of the conspiracy for **DURAN, VALERA, NEGRON, ACEVEDO, ATC, MEDLINK,** and their co-conspirators to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare through **ATC** for services that were medically unnecessary, services that were not eligible for Medicare reimbursement, and services that were never provided; (b) offering and paying kickbacks and bribes (1) to patient recruiters to provide Medicare beneficiaries to attend **ATC's** CMHCs -- and allow **ATC** to bill Medicare for services purportedly provided to them -- who were not eligible to receive PHP services under Medicare guidelines, for whom PHP services were not medically necessary to treat their medical conditions, and to whom the PHP services were not provided, and (2) to Medicare beneficiaries for the purpose of such beneficiaries attending **ATC's** CMHC even though they were not eligible to receive PHP treatment, PHP treatment was not medically necessary for them, and PHP treatment was not provided; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes to patient recruiters and Medicare beneficiaries; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

21.     **DURAN** and **VALERA** would form **ATC** as a company registered in the State of Florida and agree to conceal **DURAN'S** ownership of **ATC** from the Medicare program.

22.     **DURAN** and **NEGRON** would open **MEDLINK** as a company registered in the State of Florida as a vehicle through which to charge **ATC** monthly management fees for activities such as hiring employees, running daily operations, and controlling finances and other site management activities, when in reality there was no distinction between the leadership and management of **ATC** and **MEDLINK**.

23.     **VALERA** would maintain a Medicare provider number for five of **ATC's** locations in order to submit Medicare claims for PHP services at all of **ATC's** locations.

24.     **DURAN, VALERA**, and **NEGRON** would hire physicians, therapists, and office staff at the **ATC** locations.

25.     **DURAN, VALERA, ACEVEDO,** and **ATC** would pay and cause the payment of kickbacks to owners and operators of Assisted Living Facilities ("ALFs") and Halfway Houses in exchange for the ALFs and Halfway Houses delivering patients housed at their facilities to **ATC**.  In many instances, ALF and Halfway House owners and operators would then use a portion of the kickbacks they received from **ATC** to pay kickbacks to the patients being sent to **ATC**.

26.     **DURAN, VALERA,** and other co-conspirators would cause the alteration of therapist notes maintained in **ATC's** computer system for the purpose of making it appear that patients being treated by **ATC** qualified for PHP treatments when, in reality, they did not.

27.     **DURAN, VALERA,** and other co-conspirators would cause the alteration of and alter patient files for the purpose of making it appear that patients being treated by **ATC** qualified for PHP treatments when, in reality, they did not.

28.    **DURAN** and **VALERA** would instruct employees and doctors to alter diagnoses and medication types and levels to make it appear that the patients who were purportedly treated at **ATC** qualified for PHP services, when in reality, they did not.

29.    **VALERA** would cause the length of patient stays at **ATC** to be based on the maximum number of days Medicare would pay for PHP services.

30.    **DURAN** and **VALERA** would maintain multiple corporate bank accounts for **ATC**, including Wachovia accounts ending in 2210, 5837, 8219, 0318, 9795, 6543, 8206, and 0321.

31.    **DURAN** would maintain corporate bank accounts for **MEDLINK**, including Wachovia account ending in 0680.

32.    From in or about June 2003 and continuing through the present, **DURAN** and **VALERA** would cause claims to be submitted to Medicare on **ATC's** behalf for services purportedly provided at **ATC's** locations in a total amount of approximately $200 million.

33.    The defendants and other co-conspirators would then transfer and disburse, and cause the transfer and disbursement of, monies into and out of **ATC's** and **MEDLINK's** various corporate bank accounts to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-12
### Health Care Fraud
### (Violation of 18 U.S.C. § 1347 and 2)

34.    Paragraphs 1 through 17 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

35.    On or about the dates set forth below, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants

listed below, each aided and abetted by each other and by others known and unknown to the

Grand Jury, in connection with the delivery of and payment for health care benefits, items, and

services, did knowingly and willfully defraud and attempt to defraud a health care benefit

program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, and obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the custody and control of, Medicare, in

connection with the delivery of and payment for health care benefits, items, and services, as

listed below:

| Count | Defendants | Bene-ficiary Name | Services Billed | Approx. Dates of Service | Amount Billed | Claim Number |
|---|---|---|---|---|---|---|
| 2 | **DURAN, VALERA, ATC** | L.B. | Group Psychotherapy, Training & Education Services | 07/19/08 through 7/25/08 | $2875 | 20820700676805 |
| 3 | **DURAN, VALERA, ATC** | L.B. | Group Psychotherapy, Training & Education Services | 08/23/08 through 08/29/08 | $2875 | 20824200775005 |
| 4 | **DURAN, VALERA, ATC** | R.D. | Group Psychotherapy | 10/06/08 through 10/08/08 | $1375 | 20828500884205 |
| 5 | **DURAN, VALERA, ATC** | R.D. | Group Psychotherapy, Training & Education Services | 12/29/08 through 12/31/08 | $1500 | 20900900868705 |

| Count | Defendants | Bene-ficiary Name | Services Billed | Approx. Dates of Service | Amount Billed | Claim Number |
|---|---|---|---|---|---|---|
| 6 | **DURAN, VALERA, ATC** | R.M. | Group Psychotherapy, Training & Education Services | 02/18/09 through 02/20/09 | $1200 | 20905100868905 |
| 7 | **DURAN, VALERA, ATC** | R.M. | Group Psychotherapy, Training & Education Services | 05/18/09 through 5/22/09 | $2000 | 20914200722005 FLA |
| 8 | **DURAN, VALERA, ATC** | K.K. | Group Psychotherapy, Training & Education Services | 07/15/09 through 7/24/09 | $2000 | 20920500613005 FLA |
| 9 | **DURAN, VALERA, ATC** | E.L. | Group Psychotherapy, Training & Education Services | 10/13/09 through 10/16/09 | $1600 | 20928900636005 FLA |
| 10 | **DURAN, VALERA, ATC** | E.L. | Group Psychotherapy, Training & Education Services | 02/9/2010 through 02/12/10 | $1200 | 21004300441205 FLA |
| 11 | **DURAN, VALERA, ATC** | S.C. | Group Psychotherapy, Training & Education Services | 05/08/10 through 05/14/10 | $2800 | 21013701114905 FLA |
| 12 | **DURAN, VALERA, ATC** | O.J. | Group Psychotherapy, Training & Education Services | 06/26/10 through 06/30/10 | $2000 | 21018100693505 FLA |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 13
## Conspiracy to Defraud the United States and to Receive and Pay Health Care Kickbacks
## (18 U.S.C. § 371)

36.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.     From on or about December 13, 2002, and continuing through the present, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**LAWRENCE S. DURAN,**
**MARIANELLA VALERA,**
**MARGARITA ACEVEDO,**
**and**
**AMERICAN THERAPEUTIC CORPORATION,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a.  To defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.  To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering,

and arranging for and recommending the purchasing, leasing, and ordering of any good,
item, and service for which payment may be made in whole and in part by a Federal
health care program, that is, Medicare; and

    c.   To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and
willfully offering and paying remuneration, specifically, kickbacks and bribes, directly
and indirectly, overtly and covertly, in return for referring individuals for the furnishing
and arranging for the furnishing of any item and service for which payment may be made
in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging
for and recommending the purchasing, leasing, and ordering of any good, item, and
service for which payment may be made in whole and in part by a Federal health care
program, that is, Medicare.

## Purpose of the Conspiracy

38.    It was a purpose of the conspiracy for the defendants and their co-conspirators to
unlawfully enrich themselves by receiving and paying kickbacks and bribes in exchange for the
attendance of Medicare beneficiaries at **ATC** and for beneficiary information that was used to
submit claims to Medicare.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to
accomplish the object and purpose of the conspiracy included, among others, the following:

39.    **DURAN, VALERA, ACEVEDO,** and **ATC** would pay and cause the payment of
kickbacks to owners and operators of ALFs and Halfway Houses in exchange for the ALFs and
Halfway Houses delivering patients housed at their facilities to **ATC**.  In many instances, ALF
and Halfway House owners and operators would then use a portion of the kickbacks they

received from **ATC** to pay kickbacks to the patients being sent to **ATC**.

40.     **DURAN** would recruit ALF and Halfway House owners and operators to agree to regularly provide Medicare beneficiaries to participate in the sham **ATC** programs in exchange for kickback payments.

41.     **DURAN**, **VALERA**, **ACEVEDO**, and **ATC** would pay owners and operators of ALFs and Halfway Houses in exchange for the ALF and Halfway House owners and operators providing Medicare beneficiaries to attend programs at **ATC** for which **ATC** then filed claims with Medicare.

42.     **ACEVEDO** would serve as the primary contact for the ALF and Halfway House owners and operators and would provide kickback payments to the ALF and Halfway House owners and operators.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, the conspirators committed and caused to be committed the following overt acts, among others:

43.     On or about December 13, 2002, **VALERA** filed articles of incorporation for **ATC** with the State of Florida.

44.     On or about January 3, 2003, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 2210.

45.     On or about August 23, 2003, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 5837.

46.     On or about August 23, 2003, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 8219.

47.     On or about August 23, 2003, **DURAN** and **VALERA** obtained joint signature

authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 8206.

48.     On or about January 6, 2004, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 0318.

49.     On or about January 6, 2004, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 0321.

50.     On or about May 16, 2005, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 9795.

51.     On or about September 9, 2005, **DURAN** and **VALERA** obtained joint signature authority for a corporate bank account of **ATC**, Wachovia Bank account number ending in 6543.

52.     In or about April 2007, **ACEVEDO**, on behalf of **DURAN**, **VALERA,** and **ATC**, paid kickbacks to a co-conspirator to secure patients for **ATC**, including Medicare beneficiaries T.B. and J.S.

53.     On or about April 24, 2007, **ATC** submitted a claim in the amount of $1,625 to Medicare for services purportedly provided to Medicare beneficiary T.B.

54.     On or about May 5, 2007, **ATC** submitted a claim in the amount of $2,250 to Medicare for services purportedly provided to Medicare beneficiary T.B.

55.     On or about May 9, 2007, **ATC** submitted a claim in the amount of $4,625 to Medicare for services purportedly provided to Medicare beneficiary J.S.

All in violation of Title 18, United States Code, Section 371.

## <u>CRIMINAL FORFEITURE</u>
### (18 U.S.C. § 982)

56.     The allegations contained in Counts 1 through 13 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **DURAN, VALERA,**

**NEGRON, ACEVEDO, ATC,** and **MEDLINK,** have an interest.

57.     Upon conviction of Count 1, as alleged in this Indictment, the defendants, **DURAN, VALERA, NEGRON, ACEVEDO, ATC,** and **MEDLINK,** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

58.     Upon conviction of Counts 2-12, as alleged in this Indictment, the defendants, **DURAN, VALERA,** and **ATC,** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

59.     Upon conviction of Count 13, as alleged in this Indictment, the defendants, **DURAN, VALERA, ACEVEDO,** and **ATC** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

60.     If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

61.     The property which is subject to forfeiture includes, but is not limited to, the following:

      a.      approximately $83,021,115.54, which represents the gross proceeds of the fraud perpetrated by **DURAN, VALERA, NEGRON, ACEVEDO, ATC, AND MEDLINK;**

      b.      2009 Maserati Quattroporte VIN number ZAMJK39A190045758 registered to **DURAN;**

      c.      2008 Lincoln Navigator VIN number 5LMFL27588LJ02728 registered to **MEDLINK** and **DURAN;**

      d.      2007 Harley Davidson Motorcycle VIN number 1HD1PR8137Y954043 registered to **DURAN;**

e.  2006 BMW 750LI VIN number WBAHN83586DT33071 registered to **DURAN** and **VALERA**;

f.  2009 Land Rover Range VIN number SALSF25449A209661 registered to **DURAN** and **VALERA**;

g.  2005 Harley Davidson Motorcycle VIN number 1HD1JDB1X5Y029351 registered to **VALERA**;

h.  2010 Land Rover Range VIN number SALMF1D44A309395 registered to **VALERA**;

i.  2003 Ford Econoline VIN number 1FBSS31L03HB67921 registered to **ATC** and **VALERA**;

j.  2003 Ford E350 Cutaway VIN number 1FDWE35LX3HB15013 registered to **ATC** and **VALERA**;

k.  2010 Mercedes Benz C300 Sedan VIN number WDDGF5EB0AR090600 registered to **ACEVEDO**;

l.  property located at 1809 North Bayshore Drive #3506, Miami-Dade County, Miami, Florida, 33132, registered to **VALERA**;

m.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 2210 in the name of **ATC**, up to the amount of $83,021,115.54;

n.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 5837, in the name of **ATC** up to the amount of $83,021,115.54;

o.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 8219, in the name of **ATC**, up to the amount of $83,021,115.54;

p.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 3509, in the name of **ATC**, up to the amount of $83,021,115.54;

q.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 0318, in the name of **ATC**, up to the amount of $83,021,115.54;

r.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 9795, in the name of **ATC**, up to the amount of $83,021,115.54;

s.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 6543, in the name of **ATC**, up to the amount of $83,021,115.54;

t.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 8206, in the name of **ATC**, up to the amount of $83,021,115.54;

u.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 0321, in the name of **ATC**, up to the amount of $83,021,115.54;

v.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 6594, in the name of **DURAN**, up to the amount of $83,021,115.54;

w.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 8378, in the name of **DURAN c/o MEDLINK**, up to the amount of $83,021,115.54;

x.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 9955, in the name of **DURAN c/o MEDLINK**, up to the amount of $83,021,115.54;

y.  all funds on deposit and interest accrued thereto at Wachovia Account ending in 7573, in the name of **DURAN c/o MEDLINK**, up to the amount of $83,021,115.54;

z.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 9968, in the name of **DURAN c/o MEDLINK**, up to the amount of $83,021,115.54;

aa.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 0680, in the name of **MEDLINK**, up to the amount of $83,021,115.54.

bb.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 9960, in the name of **VALERA**, up to the amount of $83,021,115.54;

cc.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 4170, in the name of **VALERA**, up to the amount of $83,021,115.54;

dd.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 6072, in the name of **VALERA**, up to the amount of $83,021,115.54;

ee.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 0469, in the name of **VALERA**, up to the amount of $83,021,115.54; and

ff.   all funds on deposit and interest accrued thereto at Wachovia Account ending in 6098, in the name of **VALERA**, up to the amount of $83,021,115.54.

62.   If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures outlined in Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

DENIS J. MCINERNEY
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

HANK BOND WALTHER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JENNIFER L. SAULINO
JOSEPH S. BEEMSTERBOER
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

LAWRENCE S. DURAN, et al.,

           **Defendants.**
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

New Defendant(s)       Yes _____    No _____
Number of New Defendants  _____
Total number of counts       _____

__X__ Miami _____ Key West

_____ FTL _____ WPB _____ FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:   (Yes or No)    __Yes_____
     List language and/or dialect   __Spanish_____

4.   This case will take __30__ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)

| | | | (Check only one) | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | __X__ | Felony | __X__ |
| V | 61 days and over | _____ | | |

6.   Has this case been previously filed in this District Court? (Yes or No)  __No__
If yes:
Judge: _____  Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?  (Yes or No)  __No__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____  District of _____

Is this a potential death penalty case? (Yes or No)    __No__

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

_____
JOSEPH S. BEEMSTERBOER
DOJ, TRIAL ATTORNEY
Court No. A5501439
JENNIFER L. SAULINO
DOJ TRIAL ATTORNEY
Court No. A5501494

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  LAWRENCE S. DURAN

**Case No:** _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**   10 years' imprisonment

Counts #: 2-12

Health Care Fraud

18 U.S.C. § 1347

**\*Max. Penalty:**   10 years' imprisonment as to each count

Count #: 13

Conspiracy to Defraud the United States and to Receive and Pay Health

Care Kickbacks

18 U.S.C. § 371

**\*Max. Penalty:**   5 years' imprisonment

Count #:

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name:  MARIANELLA VALERA

Case No: _____

Count #: 1

_____ Conspiracy to Commit Health Care Fraud

_____ 18 U.S.C. § 1349

* Max.Penalty:  10 years' imprisonment

Counts #: 2-12

_____ Health Care Fraud

_____ 18 U.S.C. § 1347

*Max. Penalty:  10 years' imprisonment as to each count

Count #: 13

_____ Conspiracy to Defraud the United States and to Receive and Pay Health

_____ Care Kickbacks

_____ 18 U.S.C. § 371

*Max. Penalty:  5 years' imprisonment

Count #:

_____

_____

*Max. Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  JUDITH NEGRON

**Case No**:

Count  #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:     10 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  MARGARITA ACEVEDO

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:    10 years' imprisonment

Count #: 13

Conspiracy to Defraud the United States and to Receive and Pay Health

Care Kickbacks

18 U.S.C. § 371

**\*Max. Penalty**:    5 years' imprisonment

Count #:

**\*Max. Penalty**:

Count #:

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** AMERICAN THERAPEUTIC CORPORATION

**Case No:** _____

Count #: 1

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**   10 years' imprisonment

Counts #: 2-12

Health Care Fraud

18 U.S.C. § 1347 and 2

**\*Max. Penalty:**   10 years' imprisonment as to each count

Count #: 13

Conspiracy to Defraud the United States and to Receive and Pay Health

Care Kickbacks

18 U.S.C. § 371

**\*Max. Penalty:**   5 years' imprisonment

Count #:

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  MEDLINK PROFESSIONAL MANAGEMENT GROUP INC.

**Case No**: _____

Count #: 1

                 Conspiracy to Commit Health Care Fraud

                 18 U.S.C. § 1349

**\* Max.Penalty**:    10 years' imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**